UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JESSICA CRYSTAL LIRA,<br>Petitioner,<br>v.<br>MARKWAYNE MULLIN et al.,<br>Respondents. | CASE NO. 2:26-cv-02064-DGE<br><br>ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) |

Before the Court is Petitioner Jessica Crystal Lira's petition for writ of habeas corpus. (Dkt. No. 1.) Following the Court's order enjoining Respondents from housing Petitioner in a male detention unit during the pendency of this action (Dkt. No. 7 at 6), Respondents released Petitioner from immigration custody (Dkt. No. 8). Because Petitioner is released and "there are no current plans to re-detain her," Respondents argue Petitioner's habeas petition is moot. (Dkt. No. 11 at 2.) Petitioner contends the petition remains live because she requests prospective relief and under the voluntary cessation doctrine. (Dkt. No. 14 at 4.)

The Court concludes Petitioner's habeas petition is not moot, and further GRANTS Petitioner's petition for writ of habeas corpus. (Dkt. No. 1.)

## I BACKGROUND

Petitioner, a transgender woman, is a citizen and native of Nicaragua who entered the United States on December 31, 2022, without inspection or admission. (Dkt. Nos. 1 at 2; 12 at 2.) She was apprehended upon entry by border patrol agents and subsequently paroled pursuant to 8 U.S.C. § 1182(d)(5) "[d]ue to a lack of detention capacity." (Dkt. Nos. 1 at 2; 12 at 2.) Petitioner's parole was set to expire by its own terms on March 3, 2023. (Dkt. Nos. 1-3 at 2; 13-1 at 2.) On December 7, 2023, Petitioner reported to the Seattle Enforcement and Removal Office ("ERO") where she received a Notice to Appear, charging her as removable pursuant to 8 U.S.C. § 1182(a)(6)(A)(i).[1] (Dkt. Nos. 12 at 2; 13-3 at 2.) On the same day, Petitioner was released on an Order of Release on Recognizance ("OREC"). (Dkt. Nos. 12 at 2; 13-4 at 2.) On January 17, 2026, Petitioner was arrested for allegedly driving under the influence. (Dkt. Nos. 1 at 7; 12 at 2.) Petitioner alleges she was released from criminal custody without charges being filed; Respondents contend the case remains pending. (*Compare* Dkt. No. 1 at 7 *with* Dkt. No. 12 at 2.)

On May 22, 2026, Immigration and Customs Enforcement ("ICE") re-detained Petitioner during a scheduled check-in after determining—four months after the fact—that Petitioner's arrest violated her 2023 OREC. (Dkt. Nos. 12 at 2; 13-5 at 3.) Petitioner was transported to the Northwest ICE Processing Center ("NWIPC"), where she was "held in administrative segregation within the male detention unit." (Dkt. No. 12 at 2–3.)

[1] The Notice to Appear references Immigration and Nationality Act § 212(a)(6)(A)(i), which is codified at 8 U.S.C. § 1182(a)(6)(A)(i). (Dkt. No. 13-3 at 2.)

On June 12, 2026, Petitioner filed the instant petition for writ of habeas corpus, and simultaneously filed a motion for temporary restraining order ("TRO"). (Dkt. Nos. 1, 2.) Petitioner sought, in part, to enjoin Respondents from housing her in the male detention unit. (Dkt No. 2 at 1–2.) The Court granted Petitioner's motion for TRO in part, and temporarily restrained Respondents from housing Petitioner in a male detention unit or in solitary confinement. (Dkt. No. 7 at 6.) The Court further ordered that if Respondents were unable to meet those requirements, they must release Petitioner during the pendency of the motion. (*Id.*) On June 13, 2026, Petitioner was released from immigration detention on a new OREC, which imposed numerous conditions on release, including Petitioner's enrollment in Alternatives to Detention with GPS monitoring and weekly reporting. (Dkt. Nos. 8; 12 at 3; 13-8 at 2.) On June 15, 2026, the Parties filed a stipulation indicating that the immediate concerns addressed by the TRO had been resolved through administrative actions and any remaining issues would be addressed in the Parties' briefing on the habeas petition. (Dkt. No. 9 at 2.)

In the instant habeas petition, Petitioner argues Respondents violated the Due Process Clause of the Fifth Amendment by re-detaining her without providing her notice and an opportunity to respond. (Dkt. No. 1 at 8–11.) She seeks an order permanently enjoining her re-detention absent written notice and a hearing. (*Id.* at 13.) In response, Respondents contend that, as Petitioner is no longer in immigration custody, the habeas petition is moot, and a permanent injunction is overbroad. (Dkt. No. 11 at 6–7.)

## II LEGAL STANDARD

Federal courts are courts of limited jurisdiction and the burden of establishing that a case falls within federal jurisdiction is on the party asserting jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Federal jurisdiction requires a live case or

controversy at every stage of litigation. U.S. CONST. art. III, § 2, cl. 1; *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013). If, at any point during litigation, an event occurs such that there is no longer a live case or controversy upon which relief can be granted, the claim is moot and must be dismissed. *Am. Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1123 (9th Cir. 1997).

## III DISCUSSION

### A. Mootness

"A habeas petition challenging" incarceration or detention "is never moot simply because, subsequent to its filing, the petitioner has been released from custody." *Abdala v. I.N.S.*, 488 F.3d 1061, 1064 (9th Cir. 2007) (citations omitted). "For a habeas petition to continue to present a live controversy after the petitioner's release or deportation, . . . there must be some remaining 'collateral consequence' that may be redressed by success on the petition." *Id.* (quoting *Spencer v. Kemna*, 523 U.S. 1, 7 (1998)). The collateral consequence must be "specifically identified," and "only concrete disadvantages or disabilities that [have] in fact occurred, that [are] imminently threatened, or that [are] imposed as a matter of law" are sufficient. *Spencer*, 523 U.S. at 8. When, however, a petitioner receives the relief requested in the habeas petition or a court is unable to provide the relief sought, the petitioner's case is moot. *Munoz v. Rowland*, 104 F.3d 1096, 1097–98 (9th Cir. 1997).

Here, the Court finds this case continues to present a live controversy. First, as part of her prayer for relief, Petitioner requests that the Court:

> (1) Assume jurisdiction over this matter;
>
> (2) Issue an Order to Show Cause ordering Respondents to show cause why this Petition should not be granted as required by 28 U.S.C. § 2243;
>
> (3) Issue a Writ of Habeas Corpus ordering Respondents to immediately release [Petitioner] from custody and permanently enjoin her re-detention during the pendency of her case, absent written notice and a hearing prior to re-detention

> where Respondent must prove by clear and convincing evidence that she is a flight risk or a danger to the community and that no alternatives to detention would mitigate those risks;
>
> (4) Declare that [Petitioner's] re-detention while removal proceedings are ongoing without first proving an individualized determination before a neutral decisionmaker violates the Due Process Clause of the Fifth Amendment;
>
> (5) Issue an order providing for an award of attorney's fee and costs; and
>
> (6) Grant such other relief as may be just and reasonable.

(Dkt. No. 1 at 12–13.) Second, Petitioner requests that the Court return her to her annual reporting requirements, as opposed to the currently weekly reporting she is subject to following her release. (Dkt. No. 14 at 3–4.). Petitioner's release only dealt with part of the relief Petitioner requested. Petitioner's request for previous reporting requirements, as well as prospective, permanent relief in the form of an injunction remains. Third, Respondents in this case have not provided sworn assurances that the challenged conduct would not recur. *See, e.g., Picrin-Peron v. Rison*, 930 F.2d 773, 776 (9th Cir. 1991) (finding habeas petition moot after the petitioner's release, supported by a government declaration guaranteeing parole absent changed circumstances); *De Gomez v. Baker*, 606 F. App'x 409 (9th Cir. 2015) (same where release was accompanied by sworn assurances that re-detention would not occur without a bond hearing).

Unlike the respondents in *Picrin*, Respondents in this case have not provided a sworn declaration from an authorized official attesting that they will not re-detain Petitioner without an injunction preventing them from doing so. Respondents merely state there are no current plans to re-detain Petitioner. (Dkt. No. 12 at 3.) Nor do Respondents address the collateral consequences that resulted from Petitioner's detention, i.e. new weekly reporting and GPS monitoring. *See Diallo v. Scott*, Case No. 2:26-cv-00975-GJL, 2026 WL 1843102, *4 (W.D. Wash. Jun. 26, 2026) ("Petitioner here was not subject to GPS monitoring and other conditions

prior to his detention at NWIPC and, although Petitioner has now been released from physical confinement, the new conditions of his release qualify as 'collateral consequences' redressable by success on his Amended Petition.").

In light of Petitioner's request for prospective relief, the lack of binding assurances that Respondents will not repeat their actions, and the collateral consequences that have been imposed, the petition is not moot. *See, e.g., Sarkisyan v. Noem*, Case No. 2:26-CV-00504-SPG-ADS, 2026 WL 413638, at *4 (C.D. Cal. Feb. 10, 2026); *Esmail v. Noem*, Case No. 2:25-cv-08325-WLH-RAO, 2025 WL 3030589, at *3 n.5 (C.D. Cal. Sept. 26, 2025); *Cruz v. Lyons*, No. 5:25-cv-02879-MCS-MBK, 2025 WL 3443146, at *2 (C.D. Cal. Dec. 1, 2025); *Marin v. Noem*, No. 2:25-cv-09343-CV (SSCx), 2025 WL 3152261, at *2 (C.D. Cal. Oct. 21, 2025); *Im v. Semaia*, No. 5:25-cv-2733-JAK (Ex), 2026 WL 183856, at *1 (C.D. Cal. Jan. 23, 2026); *Pogosian v. Bowen*, No. 5:25-cv-03380-DOC-DTB, 2026 WL 161436, at *1 (C.D. Cal. Jan. 21, 2026).

**B. Petitioner's Re-Detention Violates Due Process**

The Due Process Clause of the Fifth Amendment protects against deprivation of liberty without proper process, and this protection extends to deportation proceedings. U.S. CONST. amend. V. ("No person shall be . . . deprived of life, liberty, or property, without due process of law[.]"); *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993))).

The traditional test for evaluating due process claims set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), "can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir.

2022). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). *Mathews* employs a three-factor test looking at (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest." 424 U.S. at 335.

1. Private interest

The first *Mathews* factor considers "the private interest that will be affected by the official action." *Id.* Courts have continually recognized an immigration detainee's private interest in freedom from imprisonment. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (finding freedom from detention "the most elemental" of private interests); *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093–1094 (E.D. Cal. 2025) (concluding the lengthy duration of the petitioner's conditional release and the meaningful connections the petitioner made with his community during that time "create[d] a powerful interest for [the petitioner] in his continued liberty").

Respondents argue that Petitioner's prior temporary parole and her 2023 OREC release conferred upon her a lesser liberty interest. (Dkt. No. 11 at 8.) However, even individuals such as Petitioner who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty. *See Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("The fact that a decision-making process

involves discretion does not prevent an individual from having a protectable liberty interest."); *Hurd v. D.C., Gov't*, 864 F.3d 671, 683–684 (D.C. Cir. 2017) (holding that re-detention after pre-parole conditional supervision requires a pre-deprivation hearing); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in parole context). Although in some circumstances the initial decision to detain or release an individual may be within the government's discretion, the government's decision to release an individual from custody creates "an implicit promise," upon which that individual may rely, that their liberty "will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." *Morrissey*, 408 U.S. at 482.

Here, when Petitioner was released on parole in December of 2022, and later issued an OREC in December of 2023, she "took with [her] a liberty interest which is entitled to the full protections of the [D]ue [P]rocess [C]lause." *Ramirez Tesara v. Wamsley*, 800 F. Supp. 1130, 1136 (W.D. Wash. 2025). During the 41 months that Petitioner was on release, she took steps in reasonable reliance on this liberty interest, including marrying a United States citizen, applying for asylum, and filing a Form I-130 Petition for Alien Relative. (Dkt. No. 1 at 2, 6–7); *see Caisa Telenchana v. Hermosillo*, Case No. 2:26-CV-00363-GJL, 2026 WL 696806, at *2–4, 9 (W.D. Wash. Mar. 12, 2026) (petitioners released on ORECs, including several who had applied for asylum and/or obtained work permits while on release, had "established liberty interests in the months and years they were permitted to live in the United States").

Petitioner's private interest in her continued liberty means the first *Mathews* factor weighs heavily in her favor.

2. <u>Risk of erroneous deprivation of interest through procedures used</u>

The second *Mathews* factor examines "the risk of an erroneous deprivation of [the petitioner's private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards[.]" *Mathews*, 424 U.S. at 335. Here, the risk of an erroneous deprivation without any hearing is high.

Respondents assert Petitioner's re-detention was justified because of her DUI arrest and because she allegedly violated a June 2025 protection order. (Dkt. No. 11 at 8.) First, Petitioner's I-213 form (*see* Dkt. No. 13-5 at 3) does not allege Petitioner was re-detained because she violated a protection order—thus, even if it is true,[2] Respondents cannot use it as a justification to continue detaining Petitioner. Second, while Petitioner was arrested for a DUI charge, the Parties dispute whether that matter remains pending. (*Compare* Dkt. No. 1 at 7 *with* Dkt. No. 12 at 2.) Petitioner's arrest warrant makes no mention of the DUI arrest, and references instead (1) the execution of a charging document to initiate removal proceedings against Petitioner, (2) the pendency of ongoing removal proceedings against Petitioner, and (3) indicia that Petitioner either lacks immigration status or notwithstanding such status is removable. (Dkt. No. 13-6 at 3.) Respondents have not identified any *contemporaneous* opportunity afforded to Petitioner to challenge the government's justification for her re-detention or its factual underpinnings. *Reyes v. Hernandez*, Case No. 2:26-CV-00633-GJL, 2026 WL 820481, at *4 (W.D. Wash. Mar. 25, 2026). Nor has Petitioner been provided an opportunity to challenge the need for additional monitoring requirements. Thus, based on the circumstances presented, there is strong risk that Petitioner was erroneously deprived of her liberty. Accordingly, the second *Mathews* factor favors Petitioner.

[2] Respondents did not submit any records showing the claimed protection order violation.

3. Government's interest

The third *Mathews* factor contemplates "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

Admittedly, Respondents have an interest in ensuring a noncitizen appears at future immigration proceedings and that a noncitizen does not pose a danger to the community. *Zadvydas*, 533 U.S. at 690. And although requiring a pre-detention process in this case would present some administrative burden, given the high risk of erroneous deprivation and the fundamental liberty interest at stake, providing effectively no pre-detention process—as ICE did here—is constitutionally deficient. The Court acknowledges that Respondents have an interest in returning to custody noncitizens who engage in criminal behavior, but nothing prevented ICE from scheduling a hearing upon becoming aware of her arrest record. *See E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1323 (W.D. Wash. 2025).

In sum, all three *Mathews* factors favor Petitioner. Respondents' detention of Petitioner violates the due process protections afforded to her by the Constitution. Petitioner has proven by a preponderance of the evidence that she was "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

**C. Respondents Must Follow the Law Before Re-Detaining Petitioner**

Having found due process violations, the Court further finds that issuing the requested injunctive relief is appropriate. Each of the four *eBay* factors supports this conclusion. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

A party "seeking a permanent injunction must . . . demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate

to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id.* Petitioner has satisfied the requirements for a permanent injunction. She suffered irreparable harm, through the violation of her constitutional right to due process and almost two months of unlawful detention. No monetary remedy can compensate for the deprivation of physical liberty. The balance of hardships favors Petitioner, as the injunction requires only that Respondents comply with the Constitution before re-detaining her. And the public interest is served by an order prohibiting Respondents from violating the Due Process Clause.

Petitioner has also established a "cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). ICE has already detained her without due process, raising concerns that, absent injunctive relief, she may be subject to the same due process violation again. Several courts in this district have granted similar relief under comparable circumstances. *See, e.g.*, *Nguyen v. Bondi*, Case No. 2:25-cv-02723-RAJ, 2026 WL 183819, at *6 (W.D. Wash. Jan. 23, 2026); *Wana v. Bondi*, Case No. 2:25-cv-02321-RSL, 2025 WL 3628634, at *6 (W.D. Wash. Dec. 15, 2025) (prohibiting re-detention without notice and hearing); *Tzafir v. Bondi*, Case No. 25-cv-02067-JHC-SKV, 2026 WL 74088, at *5 (W.D. Wash. Jan. 9, 2026) (same); *Yuksek v. Bondi*, Case No. 2:25-cv-02555-DGE-GJL, 2026 WL 60364, at *5 (W.D. Wash. Jan. 8, 2026) (same); *Do v. Scott*, Case No. C25-2187-RSL, 2025 WL 3496909, at *6 (W.D. Wash. Dec. 5, 2025) (prohibiting re-detention without valid travel document and other specified conditions).

Accordingly, the Court prohibits Petitioner's re-detention or the imposition of additional reporting and monitoring requirements unless Respondents first provide written notice of the basis for the proposed re-detention (or the proposed additional monitoring requirements) and an immigration court hearing is held to determine whether detention (or additional monitoring requirements) is appropriate.

## IV CONCLUSION

Accordingly, the Court GRANTS Petitioner's petition for writ of habeas corpus. (Dkt. No. 1.) The Court further ORDERS:

1. Petitioner SHALL NOT be re-detained, absent urgent circumstances or a clear legal basis for detention, without first providing pre-deprivation notice and an opportunity to be heard in front of an immigration judge.[3]
2. Petitioner's reporting and monitoring requirements SHALL be returned to those reporting and monitoring requirements identified in her December 7, 2023, OREC.
3. Petitioner seeks an award of fees. (Dkt. No. 1 at 13.) Petitioner is GRANTED leave to file a motion for attorney fees. The motion for fees shall identify the legal authority supporting the award of fees and shall be filed **no later than November 30, 2026.** The Parties are strongly encouraged to meet and confer regarding fees before Petitioner files a motion for attorney fees.[4]

---

[3] In the event Petitioner is re-detained, any claim by Petitioner that she has been unlawfully re-detained in violation of this Order shall be presented as a new habeas petition.

[4] In a previous matter, Respondents have requested, and the Court granted, a motion to stay the enforcement of any award of attorney fees pending the Supreme Court's decision in *Palacios v. Liggins*, No. 25-1223. *See Douangdala v. Bondi*, 2:26-cv-00963-DGE, 2026 WL 2516555 (W.D. Wash. Aug. 26, 2026).

The Clerk is directed to calendar this event and close the matter.

Dated this 1st day of September, 2026.

David G. Estudillo
United States District Judge